IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANTWAN IMOB SLATER,

                Plaintiff,                            OPINION AND ORDER

v.

                                                  17-cv-417-wmc

CORRECTIONAL OFFICER LERRIX, et al.,

                Defendants.

This court granted *pro se* plaintiff Antwan Imob Slater leave to proceed in this lawsuit under 42 U.S.C. § 1983 on First and Fourteenth Amendment claims against defendants -- a Columbia Correctional Institution ("CCI") Officer, Lieutenant, Captain, Security Director and Warden. In particular, Slater claims that defendants seized and destroyed certain of his business materials, as well as family and friends' contact information, and wrongfully, and without due process, punished him for allegedly engaging in a business enterprise and fraud in violation of his rights to free speech and due process. The defendants have moved for summary judgment on the ground that Slater failed to exhaust his administrative remedies with respect to all of these claims. (Dkt. #17.) For the following reasons, the court will grant defendants' motion and dismiss Slater's lawsuit without prejudice.

BACKGROUND

A. Conduct Report #2730282

On October 6, 2016, Slater was issued Conduct Report #2730282, for violation of Wis. Admin. Code. § DOC 303.36, enterprises and fraud, related to the conduct that

formed the basis of Slater's claims in this lawsuit. On October 13, 2016, Columbia staff held a major disciplinary hearing for Conduct Report #2730282. At its conclusion, the hearing officer accepted the allegations in the conduct report, noting that there was no reason to find that the charges had been fabricated. Accordingly, the hearing officer found Slater guilty. (Ex. 1003 (dkt. #21-1) 3.)

That same day, Slater appealed the hearing officer's decision to the warden, alleging that: (1) he was not guilty of the charge because the confiscated materials were part of a financial literacy program at a different institution; (2) the hearing officer's denial of his request to include business plan documents as evidence was a harmful procedural error; and (3) his advocate failed to collect and submit certain evidence related to the business plan. (*Id.* at 1.) On November 30, 2016, the warden returned the appeal to the hearing officer without comment, checking the box on the appeal form ordering completion/correction of the record. (*Id.*) Several sheets of paper and business contacts were subsequently added as additional record evidence and on December 9, 2016, the hearing officer reviewed the corrected record, noted the additional evidence, and again found Slater guilty of the charge, imposing a punishment of 30 days cell confinement. (*Id.* at 7.) In so finding, the hearing officer specifically added that the committee reviewed the contraband that was attached to the Conduct Report, including "[p]aperwork and several business contacts and directions for business models," and ultimately stated that: "Inmate was unable to provide any proof that items were for a business class held at another institution." (*Id.* at 11.) Slater received a copy of that decision on December 14, 2016,

2

but he did not appeal the conduct report a second time to the warden. Instead, he filed two, new inmate complaints that are addressed immediately below.

### B. CCI-2016-28526

On December 19, 2016, Slater filed inmate complaint CCI-2016-28526 -- the "first complaint" -- with the office of the Institution Complaint Examiner ("ICE"), claiming that Officer Lervix wrongly took the contact information of his friends and family, deemed it contraband, and upheld Conduct Report #2730282 for enterprise and fraud. Specifically, Slater claimed that those documents were *not* contraband, and that he has the right to write or contact his family and friends without interference. On January 9, 2017, ICE Linda Alsum-O'Donovan rejected Slater's first complaint on the grounds that a challenge to the discretionary act of a hearing officer, was outside the scope of the Inmate Complaint Review System ("ICRS"), which may only be used to challenge the *procedure* used in the disciplinary process.

### C. CCI-2016-28749

On December 22, 2016, the ICE's office received a second inmate complaint from Slater, CCI-2016-28749. In this "second complaint," Slater alleged that practicing writing business plans is protected by the First Amendment, and he believed that no policies prohibited him from engaging in that activity. Therefore, he requested a grant of authority to practice writing business plans. On December 28, 2016, ICE Alsum-O'Donovan recommended dismissal of that complaint as well, explaining that administrative staff

3

cannot issue prisoners a blanket approval "to practice writing business plans," since to do so may be a risk to safety, security and treatment goals of the institution. On December 30, 2016, the Reviewing Authority, K. Ruck, agreed with ICE's recommendation and dismissed CCI-2016-28749.

Slater appealed, and on January 13, 2017, Corrections Complaint Examiner ("CCE") Davidson recommended dismissal of the appeal on the ground that the institution's response was reasonable. At the same time, Davidson encouraged Slater to work with institution staff to pursue educational and re-entry interests. On February 1, 2017, the DOC Office of the Secretary accepted the CCE's recommendation and dismissed Slater's appeal.

OPINION

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give the prison administrators a

4

fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

To exhaust a claim related to a conduct report under the relevant regulations applicable to the time of plaintiff's lawsuit, prisoners were required to raise their grievance in the disciplinary hearing and again on appeal to the warden. *See* Wis. Admin. Code § DOC 303.82(1). Upon receipt of an appeal, the warden must review all records and forms related to the appeal, and then make a decision on the appeal within 60 days of receipt of the appeal. *Id.* § DOC 303.82(2). The warden may affirm the decision, modify all or part of the decision, reverse the decision in whole or part, or return the case for further consideration, to complete or correct the record, or for rehearing. *Id.* § DOC 303.82(3). Whatever the ruling, the warden's decision is final with respect to the sufficiency of the evidence. *Id.* § DOC 303.82(4).

Finally, under Wis. Admin. Code § DOC 310.08(2)(a), an inmate may not use the ICRS to raise "[a]ny issue related to a conduct report, unless the inmate has exhausted the disciplinary process." In other words, "if an issue 'is related to a conduct report, the inmate must raise it at the time of his disciplinary hearing and again on appeal to the warden,

5

assuming the matter is not resolved at the disciplinary hearing stage,'" before raising that issue in an inmate complaint. *Baker v. Faltynski*, No. 12-cv-125-wmc, 2014 WL 713132, at *3 (W.D. Wis. Feb. 25, 2014) (quoting *Lindell v. Frank*, No. 05 C 003 C, 2005 WL 2339145, at *1 (W.D. Wis. Sept. 23, 2005). Even after the disciplinary appeal process is complete, the inmate may only use the ICRS to appeal *procedural* errors related to the disciplinary hearing process. *See* Wis. Admin. Code §§ DOC 303.76(7), 310.05, 310.08(2)(a), (3).

As for the ICRS itself, prisoners start the process by filing an inmate complaint with the designated institution complaint examiner within 14 days of the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint may "[c]ontain only one issue," and it "shall clearly identify the issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may appeal that rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision may be appealed by the inmate to a correctional complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

Defendants cite two reasons why plaintiff did not meet these requirements. *First,* defendants point out that plaintiff failed to exhaust his claims in this lawsuit by not appealing the hearing officer's December 9, 2016, decision to the warden as required by

6

Wis. Admin. Code §§ 303.82(1), 310.08(2)(a). *See Burrell*, 431 F.3d at 294-85 (exhaustion requires the prisoner to "file complaints and appeals in the place, and at the time, the prison's administrative rules require") (quoting *Pozo*, 286 F.3d at 1025). Plaintiff does not dispute his failure to appeal the December 9 decision; instead, he argues that it was unnecessary to appeal to the warden because the November 30, 2016, warden decision was final.

Unfortunately for Slater, the warden's disposition was *not* final, having expressly sent it back to the committee for "completion/correction of the record." Wis. Admin. Code § DOC 303.76(7)(c). Afterward, the hearing officer issued a second opinion that took into consideration the business records plaintiff sought to include in the record and fleshed out the reasons for finding plaintiff guilty of enterprise and fraud.

Nonetheless, plaintiff argues that defendants should be precluded from disputing the finality of the warden's earlier November 30 decision because the Wisconsin Department of Justice took the opposite position in another lawsuit. *See State ex rel. Whiteseide v. Boatwright*, 334 Wis. 2d 147, 799 N.W.2d 929 (Table), 2011 WL 1405227 (Wis. Ct. App. 2011). In *Whiteseide,* an inmate challenged the proceedings related to his conduct report, arguing that he was wrongly denied an opportunity to appeal a hearing committee's correction of the record following a warden's direction to correct the record. *Id.,* 2011 WL 1405227, at *1. In response, the state argued that the warden's earlier decision in *Whiteseide* was properly deemed final because the *only* correction was a typographical error, which failed to include the word "not" in the final opinion. The court

7

accepted the state's argument, reasoning that the correction did not change the finding of guilt or the reasoning in any substantive way. *Id.* at *3.

Whatever the preclusive effect *Whiteseide* might or might not have in a comparable direction to remand to correct a typographical error, plaintiff's circumstances here are not the same. Unlike in *Whiteseide*, the warden's directive in this case caused the hearing officer to consider additional record evidence *and* analyze the allegations in the conduct report in a more robust fashion. Specifically, the warden directed the hearing officer to add additional evidence to the record, and the officer reviewed previously omitted business records *and* explained why this additional evidence did not change the original finding of guilt. While the hearing officer did not change the ultimate ruling, the warden's earlier decision certainly left room for the hearing officer to change course. Specifically, unlike in *Whiteseide*, the warden's November 30, 2016, directive in no way suggested that the hearing officer was bound to make any specific determination or correction upon reviewing the additional evidence, as opposed to carrying out a purely ministerial task of supplementing the record, so there is no reason to conclude that the warden's earlier decision was final.

Plaintiff also argues that the Wisconsin Administrative Code is vague as to exactly what issues he *must* appeal to the warden on appeal from a conduct report, and what issues he *may* still pursue related to that report in subsequent inmate complaint proceeding through the ICRS. In plaintiff's view, there are a number of issues beyond "sufficiency of the evidence," which he concedes are the issues that must be raised on appeal to the warden, and procedural defects in the conduct report hearing, which he argues may be raised for the first time through the ICRS. Courts have excused a prisoner's failure to

complete the exhaustion process in circumstances in which prison officials or the applicable regulations provide unclear or confusing directions to prisoners. *See Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005) (prison officials that fail to "clearly identif[y]" the proper route for exhaustion cannot fault prisoner for failure to make the correct choice); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.") (citation omitted). However, plaintiff has not provided a basis to conclude that the applicable regulations were confusing *in his circumstances* so that the exhaustion procedures were actually unavailable to him. To the contrary, § DOC 303.82(1) states that an inmate may appeal a disciplinary decision, "including procedural errors, to the warden," and § DOC 303.76(7)(1) states that "[a]n inmate who is found guilty may appeal the decision, or the sentence, or both, to the warden." Finally, under § DOC 310.08(3), only after the appeal to the warden is complete may an inmate raise procedural challenges to the disciplinary process through the ICRS.

These regulations do not place any limitations on the subject matter that plaintiff could have raised on appeal to the warden. In plaintiff's circumstances in particular, the hearing officer's renewed determination of guilt, as well as the reasons for that disposition, are both explicitly included as issues appealable to the warden. Furthermore, plaintiff has not alleged that, at the time he could have appealed, any prison official (1) told him that he was not allowed to appeal to the warden any substantive challenges to the charges in the conduct report that the warden had not yet reviewed, or (2) suggested that he had to

9

use the ICRS to pursue such a challenge. Nor does he even suggest having believed himself that such an appeal was *precluded*. Accordingly, plaintiff cannot be excused for his failure to appeal the hearing officer's second December 9, 2016, decision.

*Second*, defendants maintain that neither of plaintiff's inmate complaints related to the confiscation of his contacts and business materials served to exhaust his administrative remedies with respect to the claims in this lawsuit. Starting with CCI-2016-28526, this complaint properly was rejected as beyond the scope of the ICRS. Indeed, plaintiff referenced his First Amendment rights and directly challenged the outcome of the conduct report, but he did not raise a challenge to the procedures involved in the resolution of Conduct Report #2720787; instead, his challenge was to the hearing officer's finding of guilt. Since the DOC's regulations do not allow inmates to challenge the merit of their conduct report proceedings through the ICRS, *see* Wis. Admin. Code §§ DOC 303.76(7), 310.08(3), the ICE properly rejected this inmate complaint. As such, plaintiff failed to exhaust his administrative remedies through CCI-2016-28526. *See Dixon v. Page*, 291 F.3d 485, 491 (7th Cir. 2002) (exhaustion requires prisoner to complete the process "by following the rules the state has established for that process") (quoting *Pozo*, 286 F.3d at 1022).

As for CCI-2016-28749, plaintiff again failed to raise any procedural concerns about how his conduct report proceedings were carried out; instead, he requested approval to practice writing business plans in the future. That complaint, which referenced the First Amendment and noted that he had been disciplined for practicing writing business plans, did not actually challenge the 2016 confiscation of his materials or Conduct Report

#2720787.  Although plaintiff was not required to "lay out the facts, articulate legal theories, or demand particular relief," he must at least alert "the prison to the nature of the wrong for which redress is sought."  *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Since plaintiff sought approval to engage practice writing business plans in the future, he did not notify prison staff that he wanted to challenge the validity of his past punishment for writing business plans.  As such, the ICE was not afforded the opportunity to investigate the circumstances that led up to the charges in the conduct report, instead finding that an ICE could not grant him the type of blanket approval plaintiff was requesting.  If anything, the fact that plaintiff did not challenge the events surrounding the conduct report may well have been the reason why the ICE did not outright reject this inmate complaint as beyond the scope of the ICRS.  Accordingly, the court agrees that plaintiff did not exhaust his claims in this lawsuit through CCI-2016-28749.

Finally, plaintiff argues that if he could not use the ICRS process to exhaust his administrative remedies, the court should conclude that he exhausted the remedies that were available to him.  *See Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004) ("If prison employees refuse to provide inmates with [grievance forms], it is difficult to understand how the inmate has any available remedies.").  As discussed above, however, there *was* an administrative remedy available to plaintiff:  he could have raised his First and Fourteenth Amendment claims as defenses during his conduct report hearing or in appeal to the warden.  He did not.  Moreover, plaintiff has not suggested that he intended to appeal the December 9, 2016, decision nor that any Columbia staff prevented him from doing so.  As such, there is no basis to conclude that plaintiff's unsuccessful attempt to raise his claims

11

through the ICRS should serve as a means to pursue an appeal from the disposition of his conduct report to the warden.

Accordingly, the court will grant defendants' motion for summary judgment and dismiss plaintiff's claims without prejudice, *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004), acknowledging that plaintiff's failure to bring up these claims during his conduct report appeal likely precludes him from bringing his claims in this court.

ORDER

IT IS ORDERED that:

1) Defendants' motion for summary judgment (dkt. #18) is GRANTED.

2) Plaintiff's claims in this lawsuit are DISMISSED without prejudice.

Entered this 30th day of June, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge